## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 09-22426-CIV-MORENO/TORRES

DAVID YOUNG and,
CARLOS BARRETT,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

vs.

WEST PUBLISHING CORP.,
a Minnesota Corporation,

      Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss filed
on January 22, 2010 [D.E. 27] and Plaintiffs' Response filed on February 8, 2010 [D.E.
31].   Defendant moves to dismiss the action pursuant to the Fed. R. Civ. P. 12(b)(1)
and 12(b)(6).  The Court has considered the motion, the response, and the pertinent
portions of the record, as well as arguments presented by counsel during the hearing
on March 30, 2010.   For the reasons discussed below, Plaintiff's Motion should be
**GRANTED**.

## I.   BACKGROUND

Defendant West Publishing Corporation ("West") is a well-known publisher of
legal materials and provider of on-line legal research services and products.  West
provides these services primarily to law firms, governments, academia, and

corporations.

On August 17, 2009, the two named Plaintiffs David Young and Carlos Barrett brought a one-count class action complaint against West alleging violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.* Plaintiffs contend that, at all material times, they both had a motor vehicle registered with the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") and held a Florida diver's license issued by the Florida DHSMV. Plaintiffs allege that West acquired motor vehicle records and the corresponding "personal information" of millions of licensed drivers, including Plaintiffs, from the department of motor vehicles of various states and/or entities. West then allegedly violated DPPA and breached the privacy of millions of individuals when it made this data available for search and sale on the internet. Plaintiffs purport to represent a nationwide class of "all individuals whose personal information contained in motor vehicle was knowingly obtained, disclosed or used by West for purposes not permitted under the DPPA." *See generally* Complaint [D.E. 1].

Defendant now moves to dismiss the Complaint in its entirety arguing that the allegations fail to state a violation of the DPPA. In support of its 12(b)(6) argument, Defendant claims that the alleged uses of Plaintiffs' personal information for "legal research" do not constitute "impermissible use" under the statute. Second, Defendant argues that Section 2721(c) of the DPPA authorizes West to "resell" or "redisclose" the personal information to others for permissible uses. Finally, Defendant contends that Plaintiffs lack standing to bring this action because the Complaint does not allege that

they have suffered a cognizable injury-in-fact.

In their response, Plaintiffs argue that Defendant's motion should be denied because "legal research" does not fall under any of the "permissible uses" exceptions under DPPA and injury-in-fact is not required to assert a DPPA violation.  Finally, at the hearing, pointing to a copy of the Westlaw drop-down screen[1] attached as exhibit I to Defendant's Reply [D.E. 36-1], Plaintiffs argue that "skip tracing"[2] is yet another such "impermissible use" under the statute.

## II.   LEGAL STANDARDS

### A.   *Rule 12(b) Motion to Dismiss Standard*

Motions filed under Fed. R. Civ. P. 12(b)(1) question this Court's jurisdiction over the subject matter of the case.  A motion pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually.  *Morrison v. Amway Corp.*, 323 F.3d 920, 925, n.5 (11th Cir. 2003).  Where the jurisdictional attack is based on the face of the pleadings, the court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529

---

[1]    Before the account holder can access the Westlaw database he must select one of the "permissible uses" from a drop down menu.  The five choices include: "for official use by a Government agency," "verification of information provided to you by a person, skip tracing," "use in connection with any legal proceeding or legal research," "use in connection with insurance claims investigation or antifraud activities," and "use by a licensed private investigator for legitimate DPPA purposes."

[2]    Plaintiffs cite to a popular web-based encyclopedia called Wikipedia and define "skip tracing" as a term used to describe a method of locating a person's whereabouts by collecting as much information as possible about a given individual.  *See* http://en.wikipedia.org/wiki/Skiptrace (last visited Apr. 12, 2010).

(11th Cir. 1990). Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

The two forms of attack differ substantially. On the facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion - the court must consider the allegations of the complaint to be true. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). In this case, Defendant has made a facial attack upon the complaint and has not attempted to present any factual evidence from outside the complaint to the court. Therefore, the motion to dismiss for lack of standing will be reviewed under the same standards as a Rule 12(b)(6) motion, which are set forth below.

Plaintiff bears the burden of demonstrating that the matter is within the court's subject matter jurisdiction. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (party invoking jurisdiction bears burden of producing necessary facts to establish subject matter jurisdiction). A district court must dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of how far the case has progressed. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("[A] court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."); *Wascura v. Carver*, 169 F.3d 683, 685 (11th Cir. 1999) ("If a district court lacks subject matter jurisdiction over a claim . . . it necessarily follows

that the claim states no violation of federal law").

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombly*, 127 S. Ct. at 1964-65).

The Court must "view all the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). Thus, a complaint will be dismissed only if taking facts as true, no construction of the factual allegations will support the cause of action. *Berry,* 497 F. Supp. 2d at 1364 (citing *Marshall Cty. Bd. of Educ. v. Marshall Co. Gas Dist.,* 992 F.2d 1172, 1174 (11th Cir. 1993)). A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a

recovery is very remote and unlikely.'" *Twombly*, 127 S. Ct. at 1965 (internal citation omitted).

**B.**   ***Driver's Privacy Protection Act***

State DMVs require drivers and vehicle owners to provide personal information, such as their addresses, telephone numbers, Social Security numbers, medical information, and vehicle descriptions when they apply for a driver's license or attempt to register an automobile. *Reno v. Condon*, 528 U.S. 141, 143 (2000). In 1993, largely as a response to increasing public safety concerns over stalkers' and other criminals' access to the personal information maintained in the state DMV records, Congress enacted the Driver's Privacy Protection Act of 1994 to address these issues. 18 U.S.C. §§ 2721 *et seq.*[3] The DPPA's regulatory scheme limits the States' ability to disclose a driver's personal information without the driver's express consent. *Reno*, 528 U.S. at 144.

The DPPA generally prohibits the DMVs, their agents or contractors, from "knowingly disclos[ing] or otherwise mak[ing] available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721(a). The Act goes on to define "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name address (but

---

[3]    The most infamous and prominent of these incidents that provided a catalyst for the DPPA was the 1989 murder of a young aspiring actress named Rebecca Schaeffer, star of the television series "My Sister Sam" in the late 1980s.  *See* 139 Cong. Rec. S15745-01, S15762 (1993).  An obsessed fan, one Robert Bardo, stalked and killed the 21-year old actress, in her Los Angeles apartment, after he obtained her unlisted address from the California DMV.

not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accident, driving violations, and driver's status." *Id.* § 2725(3).

As previously noted, "[t]he DPPA's ban on disclosure of personal information does not apply if drivers have consented to the release of their data." *Reno*, 528 U.S. at 144. The Act's ban on nonconsensual disclosures is also subject to a number of statutory exceptions. *Id.* at 145. The DPPA requires disclosure of personal information:

> for use in connection with matters of motor vehicle or driver safety and theft, motor vehicle emissions, motor vehicle product alterations, recalls, or advisories, performance monitoring of motor vehicles and dealers by motor vehicle manufacturers, and removal of non-owner records from the original owner records of motor vehicle manufacturers to carry out the purposes of titles I and IV of the Anti Car Theft Act of 1992, the Automobile Information Disclosure Act, the Clean Air Act, and chapters 301, 305, and 321-331 of title 49.

18 U.S.C. § 2721(b). The Act then lists fourteen exceptions that allow for limited permissible disclosure of personal information as follows:

> (1)  For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
>
> (2)  For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alternations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.
>
> (3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only -
>       (A) to verify the accuracy of personal information submitted by the

individual to the business or its agents, employees, or contractors; and

(B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

(4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7) For use in providing notice to the owners of towed or impounded vehicles.

(8) For use by licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

(10) For use in connection with the operation of private toll transportation facilities.

(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information

pertains.

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicles or public safety.

18 U.S.C. § 2721(b)(1)-(14).

In addition, § 2721(c) of the DPPA permits "authorized recipients[s]" of personal information to resell or redisclose this information:

(c) An authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b)(11) or (12)). An authorized recipient under subsection (b)(11) may resell or redisclose personal information for any purpose. An authorized recipient under subsection (b)(12) may resell or redisclose personal information pursuant to subsection (b)(12). Any authorized recipient (except a recipient under subsection (b)(11)) that resells or rediscloses personal information covered by this chapter must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicles department upon request.

18 U.S.C. § 2721(c).

It is important to note that, in our Circuit, the "permissible uses" outlined in § 2721(b) are not affirmative defenses for which a defendant carries the burden of proof. Instead, the plaintiff bears the burden of showing that the obtainment, disclosure, or use of personal information from his motor vehicle records was not for the purpose enumerated in that subsection. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnson, King & Stevens, P.A.*, 525 F.3d 1107, 1111-1114 (11th Cir. 2008) (refusing to shift the burden of proof to the defendant, since "Congress [did] not squarely address the question, . . . the statute's structure and language do not suggest a shift of the burden

to the defendant . . ., and . . . plaintiffs are not peculiarly at a disadvantage in the discovery of necessary facts").

 Finally, the DPPA provides a statutory private right of action by expressly stating that: "[A] person who knowingly obtains, discloses or uses information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court."  18 U.S.C. § 2724(a).  DPPA violators may be liable for the following: (1) actual damages (not less than liquidated damages in the amount of $2,500); (2) punitive damages; (3) attorneys' fees and other litigation costs; and (4) preliminary and equitable relief.  18 U.S.C. § 2724(b).

### III.   ANALYSIS

#### A.   *Rule 12(b)(6)*

The Complaint generally alleges that "West knowingly obtained, disclosed or used personal information of Plaintiffs and Class members contained in motor vehicle records maintained by state DMVs, for legal research and other purposes not permitted under the DPPA."  *See* Complaint ¶ 43.  Thus, Plaintiffs assert three possible bases for liability under 18 U.S.C. § 2724(a): (1) improper use; (2) improper disclosure; and (3) improper obtainment.  Nonetheless, Plaintiffs fail to properly state a cause action pursuant to § 2724(a) under any of the three possible theories.

First, the allegations listed in the Complaint fail to list a single instance of how West used the information in violation of the Act.  Plaintiffs apparently attempt to imply that their "impermissible use" flows from the allegations that West sold the DPPA-covered information to third parties for legal research.  However, Plaintiffs

concede in their response that, for purposes of this motion, Plaintiff was an "authorized recipient" of the information under the DPPA.  *See* Pls.' Resp. in Opp'n at 10.  *See, e.g., Graczyk v. West Publishing Corp.*, No. 09 C 4760, 2009 WL 5210846, at *3-4 (N.D. Ill. Dec. 23, 2009) (one that qualifies as "authorized recipient" under DPPA despite not having a "permissible use" listed in § 2721(b) because "if Congress had intended to require that the 'authorized recipient' of personal information also be a user of that information, it could have written the DPPA exceptions explicitly to that effect.").  Therefore, because Plaintiffs do not contest that West was an "authorized recipient," its "use of information for resale is proper unless its resale is in violation of the statute, in which case the proper claim would be one for improper disclosure."  *Russell v. Choicepoint Services, Inc.*, 300 F. Supp. 2d 450, 455 (E.D. La. 2004).

Likewise, Plaintiffs may not maintain an "improper obtainment" claim under § 2724(a) because West, as a data aggregator, was an "authorized recipient" of Plaintiffs' personal information under the statute.  In *Russell*, for example, plaintiff alleged that the defendant had illegally obtained personal information from the Louisiana DMV for impermissible purpose of disclosure and distribution by resale.  *Russell*, 300 F. Supp. 2d at 455.  After embarking on an in-depth analysis of the language of the statute and its legislative history, the court dismissed plaintiff's claims based on "improper obtainment."  *Id*.  In doing so, the court reasoned that a DPPA claim for "improper obtainment" cannot survive without the allegations of accompanying impermissible use.  *Id*.

Faced with the persuasive reasoning of both *Russell* and *Graczyk*, Plaintiffs

instead argue that, although Defendant may be an "authorized recipient" of the information, it nonetheless violated § 2724(a) when it disclosed the protected information to third parties for "legal research."  Plaintiffs maintain that "legal research" is an impermissible use under the statute.  Therefore, as essentially both parties agree, the outcome of this motion to dismiss turns on the issue of whether "legal research" falls under one of the "permissible uses" exceptions pursuant to § 2721(b).

When interpreting a statute to determine legislative intent, the court must start with the plain meaning of the statute.  *United States v. Prather*, 205 F.3d 1265, 1269 (11th Cir. 2000).  Put differently, we must first look to the language of the statute itself to "give effect to the unambiguously expressed intent."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 (1984).  This approach is consistent with the presumption that Congress said what it meant and meant what it said.  *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1167 (11th Cir. 2003).  "In our circuit, '[w]hen the import of the words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.'"  *United States v. Weaver*, 275 F.3d 1320, 1331 (11th Cir. 2001) (quoting *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc)).

The language of 18 U.S.C. § 2721(b)(4) expressly states that DPPA-covered personal information may be disclosed "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in

anticipation of litigation, and the execution or enforcement of judgments and orders." This subsection clearly and unambiguously permits disclosure of information for "legal research" so long as the research is used in connection or anticipation with some type of legal proceeding. *See, e.g., Briggman v. Ross*, No. 5:09CV00040, 2009 WL 3254459, at *2 (W.D. Va. Oct. 9, 2009) (granting Rule 12(b)(6) motion and dismissing DPPA claims pursuant to the litigation exception when the defendant accessed the plaintiff's DMV records during the course of litigation); *Shadwell v. Clark*, No. 5:09CV00071, 2009 WL 2970515, at *3 (W.D. Va. Sept. 16, 2009) (concluding that a plaintiff failed to establish that the litigation exception did not apply when the "defendants had accessed DMV records in 'collusion' with the state courts" during child support litigation); *Manso v. Santamarina & Assocs.*, No. 04 Civ. 10276(LBS), 2005 WL 975854, at *4 (S.D.N.Y. Apr. 26, 2005) (dismissing DPPA claim when the defendants obtained plaintiff's address from his DMV records during litigation in the New York Housing Court).[4]

Having concluded that the Act unambiguously permits the use of personal information for "legal research" that is related to or made in anticipation of litigation,

---

[4]     The § 2724(b)(4) litigation exception has its limits. Thus, for example, the Third Circuit concluded that the exception does not include disclosure of information for the purpose of "identify[ing] potential litigants and claimants who may wish to pursue remedies for [defendant's] violation of the DPPA." *Pichler v. UNITE*, 585 F.3d 741, 752 (3d Cir. 2009). On the other hand, our Circuit affirmed trial court's grant of summary judgment to a defendant who had acquired the driving records of 284,000 Florida residents. *Thomas*, 525 F.3d at 1109-10. The court concluded that the defendant's conduct fell within the litigation exception because, according to deposition testimony, he was gathering the information in order to contact potential witnesses for his deceptive trade practices lawsuit against a number of automobile dealerships. *Id.* at 1114-15.

we must next determine whether "legal research" that is not connected to any type of legal proceeding is also permissible under the statute. Turning back to the language of the statute, § 2721(b)(5) also permits disclosure "for use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals." This subsection generally and broadly informs us that "permissible use" includes use for "research activity." Naturally, "legal research" falls under the umbrella of "research activity." Furthermore, the Eleventh Circuit has labeled the § 2721(b)(5) exception as being tied to "researchers." *Thomas*, 525 F.3d at 1114 ("Many of the § 2721(b) enumerations are tied to a particular occupation or organization and its corresponding lawful need . . . § 2721(b)(4) (legal investigation, service, proceedings, and enforcement); § 2721(b)(5) (researchers)").

DPPA's legislative history also supports our conclusion. A review of the Congressional Record indicates that the Act was intended "to prevent unfettered access to personal information and to give individuals more control over the disclosure of their personal information, while continuing to allow state DMVs to disclose the information for legitimate government and business needs." *Graczyk*, 2009 WL 5210846, at *5. Various of the Act's sponsors expressly indicated that DPPA would "provide for bona fide research and other purposes" and that "the flow of information would only be denied to a narrow group of people that lack legitimate business." 140 Cong. Rec. H2518-01, H2527 (Apr. 20, 1994) (statement of Congressman Goss).

Plaintiff's reliance on a recent district court decision in *Welch v. Theodorides-*

*Bustel*, 4:09cv302-RH/WCS, 2010 WL 22365 (N.D. Fla. Jan. 5, 2010), is misplaced.  In

*Welch*, a Florida driver brought a class action against officials of the Florida DMV

alleging violations of DPPA when it disclosed the protected information to a private

corporation that in turn made the information freely available on the internet.  *Id*. at

*1-2.  After finding that the allegations indicated that an "internet user [could] access

the information for any or no reason - or on a whim," the court concluded that the

complaint sufficiently stated a DPPA violation and denied defendant's motion to

dismiss.  *Id*. at *2-3.  Unlike *Welch*, however, Plaintiffs here allege that the

information was made available for *legal research*, a permissible use, rather than for

*any* purpose as stated in *Welch*.

Having considered the language of the statute and its legislative intent, we

conclude as a matter of law that "legal research" falls under the "permissible uses"

exceptions of DPPA.[5]  Therefore Defendant's motion to dismiss should be granted for

---

[5]      At oral argument, Plaintiffs identified "skip tracing" as yet another "impermissible use" for which West discloses the DPPA-protected information.  We point out that we are not obligated to consider an argument raised for the first time at oral argument.  *See, e.g., Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1561 n.11 (11th Cir. 1995); *see also Harris v. Wu-Tang Prods., Inc.*, No. 05 Civ. 3157(WHP), 2006 WL 1677127, at *3 (S.D.N.Y. June 16, 2006) ("This Court need not consider an argument raised for the first time at oral argument.").  Nonetheless, based on counsels' arguments at the hearing, we note that "skip tracing" presents a much closer call than the question of "legal research."  Unlike "legal research," "skip tracing" cannot *per se* always be considered a "permissible use" under DPPA.  While tracing of an individual's whereabouts is sometimes permissible under the Act, such tracing must be conducted for the purpose of "preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual," 18 U.S.C. § 2721(b)(3)(B), or by "an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49."  18 U.S.C. § 2721(b)(9).  However, we do not address this argument here because the parties have not briefed this issue in their filings and, more importantly, because Plaintiffs' allegations suffer from other prudential justiciability problems that

failure to state a claim.

**B.**      *Rule 12(b)(1)*

### 1. *Standing*

Litigants in federal court must have standing in order to be able to bring a claim. *Fed. Deposit Ins. Corp. v. Morley*, 867 F.2d 1381, 1386 (11th Cir. 1989) (citing *Valley Forge Christian College v. Am. United for Separation of Church and State*, 454 U.S. 464, 471 (1982)).  A party who wishes to bring a complaint must satisfy a two-part standing test consisting of a constitutional component and prudential considerations. *Id.* at 1386.  To fulfill the constitutional component, the plaintiff must show three elements: 1) that he has suffered an actual injury or shows such an injury is imminent; 2) that the injury is fairly traceable to the challenged conduct of the defendant; and 3) a favorable decision will redress the party's injury.  *Id.*  Next, the plaintiff must demonstrate that prudential considerations do not preclude a court from hearing the claim.  *Id.*  Courts recognize three prudential factors that prevent the case from being heard: 1) assertion of a third party's rights rather than individual legal rights; 2) allegation of a generalized grievance rather than an injury peculiar to such litigant; and 3) assertion of an injury outside the statute's or constitutional provision's zone of interest.  *Id.*

Standing derives from Article III of the U.S. Constitution that provides, in relevant part, that the "judicial Power shall extend to all *Cases*, in Law and Equity,

---

we address later in this Report and Recommendation.  *See Renee v. Geary*, 501 U.S. 312, 315 (1991) ("Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so.").

arising under this Constitution . . . [and] to *Controversies . . . .*"  U.S. CONST. art. III, § 2 (emphasis added).  Thus, in order to satisfy this requirement, a plaintiff who brings a claim in federal court "must have suffered an 'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In this regards, standing relates to whether an alleged injury is sufficient to raise an Article III case-or-controversy and whether the plaintiff is the appropriate person to complain about the alleged injury.  *See id*.

An actual or threatened injury sufficient to meet Article III case-or-controversy "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).  To a certain degree, Congress may define an injury, for case-or-controversy purposes, where one may not have existed under the common law.  *See Lujan*, 504 U.S. at 580 (Kennedy, J., concurring).  For example, in *Federal Election Comm. v. Akins*, the Supreme Court found that the Federal Election Campaign Act created a right to information and, consequently, found an injury sufficient for standing where the FEC allegedly failed to obtain and produce information in violation of the Act.  *Federal Election Comm. v. Akins*, 524 U.S. 11, 20-22 (1998).  The Court found that the injury in that case was the right to obtain (via the FEC) financial information from a politically active private organization, a right solely secured by statute.  *Id*.

18 U.S.C. § 2724(a) grants individuals a right not to have information from their state motor vehicle record obtained for purpose not permitted under the DPPA.  Thus,

if West knowingly obtained, disclosed or used Plaintiffs' personal information for a purpose not permitted under the DPPA, an injury has occurred such that Plaintiffs have standing to bring a cause of action.

Plaintiffs allege in their Complaint that Defendant "obtained, disclosed and used" proposed Class members' personal information in violation of DPPA.  However, in light of the discussion above, these allegations fall substantially short of establishing standing.  Plaintiffs have at this point failed to plea any facts showing that West has disclosed the personal information for an impermissible use.  Therefore, Plaintiffs have failed to show that they have suffered an injury-in-fact.  Furthermore, the allegations fail to establish a causal connection between Defendant's alleged violations of DPPA and the alleged harm they suffered.  *See, e.g., Russell v. Choicepoint Services, Inc. (Russell II)*, 302 F. Supp. 2d 654, 670-71 (E.D. La. 2004) (finding that plaintiffs had not shown "injury-in-fact," thus had no standing to bring the DPPA-claim and granting defendant's motion to dismiss because [e]xcept for the redisclosure of DMV information to their attorney, plaintiffs have presented no evidence that their personal information was either used or resold by defendant in violation of the DPPA.").

Accordingly, we conclude that Plaintiffs have failed to establish standing, and Defendant's motion to dismiss pursuant to Rule 12(b)(1) should also be granted.

## 2.  Ripeness

Also derived from Article III's case-or-controversy language and from prudential considerations is the concept of ripeness, a doctrine that is "designed to prevent the

courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Levy v. Miami-Dade Co.*, 358 F.3d 1303, 1305 (11th Cir. 2004) (internal quotations and citation omitted).  In other words, the doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.*" Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003); *see also Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974) (Ripeness is essentially a "question of timing.").  Ripeness, more than standing, pertains to "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).  Ripeness may turn on whether a delay in adjudication would cause hardship, and that inquiry, furthermore, may turn on whether an injury has occurred. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

In *Ohio Forestry*, for example, the Supreme Court found that the Sierra Club's challenge to a federal agency's plan to allow logging on federal lands was not ripe because logging permits had not been issued, the Club could later challenge specific logging proposals, and thus no sufficiently certain injury was imminent. *Id.* at 733-34. In that regard, ripeness addresses whether an injury has yet occurred.

Standing and ripeness overlap to a certain degree because both doctrines look to the existence of actual injury to the plaintiff caused by the alleged wrong.  "Few courts draw meaningful distinctions between the two doctrines; hence, this aspect of

justiciability is one of the most confused areas of the law." *Wilderness Soc'y v. Alcock*, 83 F.3d 386, 389-90 (11th Cir. 1996).  Standing, however, may be distinguished from ripeness because where standing is at issue the question regarding the existence of an actual injury arises from the identity of the parties rather than the non-occurrence of events in the causal chain which may or may not occur.  *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 n.3 (11th Cir. 1991).  For example, there may be standing without ripeness, as when a party alleges a concrete injury but has not exhausted prescribed administrative remedies.  *See, e.g., Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).  On the flip side, there may be ripeness without standing, as when an injury is fully formed, but the remedy sought would simply not redress the harm.  *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 617-18 (1973).  There may also be ripeness without standing when an injury is fully formed but the plaintiff simply asserts the claims of third parties.  *See, e.g., Whitmore v. Arkansas*, 495 U.S. 149, 151 (1990).  Finally, "[a] threatened or imminent injury may satisfy standing's injury-in-fact requirement, yet the claim may still be unripe if the issues are not fit for judicial review, perhaps because future events may greatly affect the outcome of the litigation and the cost of waiting is not particularly severe."  *Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003).

Plaintiffs' counsel argued at the hearing that, although not listed in the Complaint, "skip tracing" is yet an another example of impermissible use that West allows its subscribers to access the DPPA-protected information.  However, even

assuming *arguendo* that "skip tracing" can constitute an improper use under the Act, based on the facts presented we cannot conclude that Plaintiffs' claims against West are ripe for adjudication.  First, as we previously concluded, West is not a user of the "personal information" but rather an "authorized recipient" who is authorized to resell such information to third parties for permissible use.  *Graczyk*, 2009 WL 5210846 at *3-4.  Likewise, Plaintiffs cannot maintain an "obtainment" claim because, as Plaintiffs' counsel conceded at the hearing, West provides the DPPA-protected information to its subscribers for numerous *permissible* uses.  Nonetheless, despite being an "authorized recipient" under the Act and its lawful initial obtainment of the protected information, West may potentially be liable for knowing "disclosure" to third parties for an impermissible use under the Act.

However, the ripeness prerequisite of actual injury mandates that the Plaintiffs' DPPA-protected information be actually *disclosed* to a third party to give rise to the alleged impermissible use ("skip tracing").  The mere potential of improper disclosure sometime in the future does not constitute an injury.  *McCready v. White*, 417 F.3d 700, 704 (7th Cir. 2005) (holding that "[§ 2724(a)] authorizes private suits, but only by persons whose information has been disclosed improperly"); *cf. Kehoe v. Fidelity Fed. Bank & Trust*, 421 F.3d 1209, 1212 (11th Cir. 2005) ("Fidelity does not dispute that a violation of the DPPA occurred - it purchased and used Kehoe's personal information for a purpose that is not permitted under § 2721(b).  Since a *violation occurred*, Kehoe can bring this action pursuant to § 2724.") (emphasis added).  In other words, the ripeness doctrine instructs us to refrain from adjudication of these claims because the

actual injury to the individual named plaintiff is quite speculative at this point and contingent on future events.

Furthermore, allowing this purported class action to proceed at this point would potentially subject West to billions of dollars in liability.  Clearly, such result was not the intent of the DPPA.  *See, e.g., Graczyk*, 2009 WL 5210846 at *6 ("if defendant [West] was found liable for obtaining plaintiffs' and class members' personal information without permissible use, its liability under § 2724 would potentially be in the billions of dollars in liquidated damages.  This is an *absurd* result not in keeping with the plain language, intent, or spirit of the DPPA.") (emphasis added).

To further illustrate the ripeness problem with Plaintiffs' claims, perhaps the following analogy may be helpful.  For example, every account holder with Westlaw, under a given subscription plan, can access the motor vehicle records on Westlaw's electronic database.  With access to this database, the user can search the license plate number of a vehicle and learn the name and address of the registered owner of that vehicle.  The holder of such a Westlaw account, however, has not obtained personal information from the motor vehicle records contained in such database just for the simple fact of possessing the account and password.  Surely, Plaintiffs cannot maintain a class-action against such a Westlaw account holder for merely having the ability to obtain DPPA-protected information for impermissible purpose sometime in the future.  Instead, each individual plaintiff would have to show that his or her particular data was actually obtained by a given Westlaw account holder for an impermissible use.  Likewise here, assuming of course that "skip tracing" falls under an impermissible use,

each individual plaintiff would have to show that his or her information was actually disclosed.  *See, e.g., McCready*, 417 F.3d at 704.

Therefore, we conclude that Plaintiffs' claims are not ripe for judicial adjudication at this point and any amendment of the Plaintiffs' Complaint would prove to be futile.

## IV.   *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant West Publishing Corp.'s Motion to Dismiss [D.E. 27] should be **GRANTED**.  Plaintiffs' claim based on the allegations of "legal research" as the impermissible use under DPPA should be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  To the extent that the claim is based on any other allegations of impermissible use, it should be **DISMISSED** for lack of standing/ripeness.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of April, 2010.


_____/s/ Edwin G. Torres_____
EDWIN G. TORRES
United States Magistrate Judge